Beport of Committee IN favor of Mr. Granger.
In AsseMbly, January 30th, 1829.
Mr. Edgarton, from the committee on privileges and elections, to which was referred the petition of Harvey Granger, of the county of Saratoga, and the petition of sundry inhabitants of the town of Greenfield, in said county, together, with the accompanying documents, reported:
The committee, in the investigation of the subject committed to them, have endeavored to bestow upon it that consideration which its merits so imperiously require,
The petitioner, Harvey Granger, prays to be admitted to a seat in this House as a member of Assembly, duly elected from the county of Saratoga. In assigning the cause why the petitioner should be entitled to a seat, he alleges that fraud or gross negligence is chargeable to the inspectors of election, in the town of Greenfield, in said county ; and which, if not corrected is calculated to destroy all confidence in the purity of elections and prostrate the sovereignty of the people.
The petitioner further states, that it will appear by the affidavits and documents presented with his petition, that at the late annual election held on the 3d, 4th and 5th days of November last, by the certified canvass of the votes of the town of Greenfield, by the inspectors of elections in said town, that Howel Gardner, the candidate for the'office of elector for President and Yice-President at said election, in said town, received one hundred and eleven votes for said office.
*84 Whereas by the affidavits of one hundred and seventy-two electors of that town', it appears that the said Howel Gardner received one hundred and seventy-two votes for the office of elector. Erom which facts the petitioner avers that it is manifest that the inspectors of said town have wickedly and corruptly taken' from the ballot-box appropriated for receiving the ballots of such election, sixty-one votes; or they have so negligently and carelessly kept the said box as to suffer some other evil minded and wicked citizen to perpetrate the said fraud ; and prays that the same may be inquired into by this House.
Accompanying the petition is referred to the committee, also, the petition of twenty-eight of the inhabitants of the town of Greenfield, praying legislative inquiry as to the allegations stated by the petitioner.
In support of these declarations and allegations of the petitioners, are presented the affidavits of one hundred and seventy-two persons, who swear positively to the fact, that they at the late election in said town, voted for Howel Gardner, for elector of president and vice president. One hundred and fifty of the persons so sworn or affirmed, have subscribed or taken an- oath or affirmation before Judiah Ells-worth, a commissioner, etc., in the words following, to wit:
Saiiatoga County, ss :
“ The following persons, whose names are hereunto subscribed, being severally sworn or affirmed, depose and say that they did, each one for himself, during the election held in the town of Greenfield, in said county, on the third, fourth and fifth days of November last, present and deliver to the board of inspectors of said election, a paper ballot, containing the name of Howel Gardner for elector, which said ballot was received by the said board, to be inserted in the ballot-box.”
Of the residue of the one hundred and seventy-two persons, so sworn or affirmed, it appears that fourteen of the number took and subscribed before Charles Deake, Esq., a commissioner, etc., an oath or affirmation, of the import and substance as above recited ; and several other affidavits taken before other individuals, of the same amount.
Erom the state of the case here presented, the committee considered themselves imperiously required to apply to the House to send for persons and papers for a further investigation of the matter they had in charge. That power having been granted by the House to the committee, the chairman, in pursuance of the order of the *85 committee, issued a summons for each of tbe inspectors of election in tbe town of Greenfield, viz.: Jonathan Lapham, supervisor; Solomon Dake, town clerk; and Silas Gifford, Henry Miller and Adam IBockes, Jr., assessors of said town. '
They also issued, at the request of the delegation from the county of Saratoga, a like summons for Salmon Childs, Charles Deake, John Prior, Elilm Wing, and also issued, at the request of the petitioner, a" summons for Seth Hewitt and Judiah Ellsworth, which was duly served by the sergeant-at-arms of this House. And, in pursuance of the notice so given, each of the persons named in the summons appeared before the committee, and was sworn and examined, except Seth Hewit, who attended, but was not sworn or examined.
From the testimony of the inspectors, it fully appeared that the election in the said town of Greenfield was properly conducted. The inspectors uniformly stated that the usual care was taken of the ballot-boxes during each adjournment of the polls.
That a slip of paper was fastened over the hole in the lid of the boxes, by wafers, and also over the key-hole, and that the boxes were returned at the opening of the polls, after each adjournment, in the same situation.
The inspectors also testified that two nights of the election the ballot-boxes were kept by Solomon Dake, the town clerk, and the keys of the boxes kept by some one of the board.
They also state that one night during the election, the ballot-boxes were kept by the supervisor, and the keys by one of the assessors.
The supervisor testified that during the night he had the custody of the boxes, they were locked up in a chest in the house in which he lives.
Solomon Dake, the town clerk, testified, that the two nights the said ballot-boxes were in his possession, they were kept in his store, locked by himself in the evening, the key taken into his dwelling-house and hung up. And that during one or both of the evenings which the boxes were in his store, there were a number of people in and about his store on business, and that lie was in and out of the store for shbrt periods of time, and thinks it impossible for any one to have interfered or meddled or opened the said boxes without his knowledge.
’ The town clerk also testified, that during the thrqe days of election, he had a clerk who attended his store, but slept in his dwelling-house; and that on one of the mornings of the election, his clerk went to *86 the store before him, and was opening the window-shutters when he went to the store, and thinks he could not have been there more than five minutes before him. The boxes remained in his store each morning until he started for election ; and he was in and out every few minutes, and no one could have robbed the boxes without his knowledge.
The clerk whom he employed during the election stayed but four days; lives in the town, and is 'a young man of fair character and good reputation.
The said town clerk further stated to the committee, that Alvah Dake, in his presence, said that the election in the town of Greenfield would be destroyed or set aside ; and that he, the said Alvah Dake, would procure some one to vote twice, or get some illegal votes ; and that he, the said Alvah Dake, would cause the said election to be lost; and that these threats were made before the election and during the time of the election ; and that he, the town clerk, cautioned the board of inspectors to be careful, for such threats were made; and that they were more than usually careful in conducting the election in that town.
The town clerk also testified that a short time after the election, a number of persons were collected at his store and a conversation was held upon the subject of the late election, and the loss of votes claimed for the Jackson elector, v The ballot-boxes were then in his store as they had been during the time he had held the office of town clerk, which was since April last; and after examining the locks to the ballot-boxes, one key would open four of the boxes; that a part of the boxes were secured by a small chest or trunk-lock, and the others by means of small brass pad-locks. He also states that he had been in partnership with Alsah Jake the season past, in the store, but that they had dissolved, and had never had any difficulty; was no quarrel or ill-wjll existing between them, previous to this time, to his knowledge. All the inspectors concur in opinion that the election was conducted with more than ordinary caution.
Salmon Childs testified that he is acquainted with all the inspectors of said town, and that they are entitled to the confidence of all who reside in that town, and that Solomon Jake, the town clerk, is an upright and industrious young man.
Judge Childs testified that he had known most of the inspectors mapy years, and had perfect confidence in them all.
See report of committee, Assembly Journal, 1829, pages 324 and *87 325, for further testimony as to character of inspectors; also affidavits Nos. 1 to 11 in appendix 0 and D, in said Journal
The certificate of the town canvass has been furnished the committee, from which it appears that Howel Gardner, at the late election in the town of Greenfield, received one hundred and eleven votes, to which certificate they beg leave to refer, marked No. 12, Assembly Journal, 1829, appendix “ 0.”
The official canvass also, of the county, has been furnished the committee, marked 12, Assembly Journal, 1829, appendix “ 0,” to which the committee beg leave also to refer the House.
The committee have had suggested to them several expedients to arrive at the truth in the investigation of this matter; but they could not be fully convinced as to their propriety. It has been suggested to the committee to institute a commission to go into the town of Greenfield to take the deposition of all the voters in said town.
The committee, however, thought this course objectionable.
It has also been under consideration before the committee whether they could allow evidence to come before them to impeach the credibility of the affidavits submitted, inasmuch as that course would involve a protracted and irritating inquiry as to the credibility of the witnesses who have been adduced by both parties. And as the technical rules of legal evidence are extremely perplexing in an investigation of this description, to refuse to hear any evidence that might be offered, would be a denial of justice to the parties interested.
The committee have gone thus far in giving a concise view of the features of the case about to come before the House.
They cannot, however, forbear to remark, that they have earnestly labored to look at'the subject before them divested of all its party coloring and stripped of all its extraneous circumstances. They are aware that feelings of a nature not the best calculated to develop the real merits of the question in issue between the petitioner and those accused may have had an influence informing a judgment; but if such feelings have existed, the committee are unconscious of their bias or control on this occasion.
"What, then, is the point in issue? A highly respectable and respected citizen charges the inspectors of election, equally respectable and respected, with fraud, corruption or gross negligence in the discharge of important solemn official duty. Nothing less'is involved in this question than the purity of our elections, or the final and fatal *88 overthrow of all that is valuable and all that is dear to the heart of a freeman in this great, this prosperous and happy republic. If the choice of our rulers is to be wrested from us by corruption of our inspectors of election at the ballot-boxes, well may we be alarmed, and as sentinels and as guardians of the birthright for which our fathers pledged before the world their “lives, their fortunes and their sacred honors,” we are bound to take warning. If, on the other hand, the character, the integrity, the purity of our public officers is to be assailed by the rude assaults of party animosity and political strife, then farewell to our boasted institutions, our civil rights, if not summarily and speedily redressed.
No reprehension can be too severe, and scarcely any punishment too rigorous, if the inspectors of this board of election are guilty of that with which they are charged. No sentence within the range of our penal code would scarcely be too hard for men who would conspire to destroy the character of this board of inspectors, by asserting that to be true which they knew to be false, while in the discharge of official duty.
The committee have -found great embarrassment in attempting to arrive at reasonable certainty upon the case before them. Erom the peculiar nature of the points in issue, and being without example or precedent to guide them in their labors, as far as legislative authority is concerned, they have hesitated and have forborne to express their own opinions but with extreme diffidence.-
Will corruption, if brought home to one box in the election in question, vitiate and destroy the remaining ballots found in other boxes, when all are included in the same certificate of the inspectors ? The committee are aware that a sort of legal maxim exists, that bad in part bad as a whole. Has this House the authority -to invalidate the election of a member of this House because improper conduct or corruption has tainted the election of another and distinct officer of the government, although voted for at the same election? Would corruption, in the election of a justice of the peace at the election in question, have deprived a member of this House of a seat here who held the official certificate, had such corruption, fraud, or gross negligence, been proved beyond'the power of contradiction ? These and many other questions of a similar nature and like import, every member of the House will readily perceive can bo put.
Erom the detail of the evidence, a subject of all-pervading interest in an elective government, it appears that the oaths of more than *89 sixty witnesses contradict the certificate of the inspectors as to a part y of tlie facts attested by that certificate.
If this great number of witnesses inform the committee truly, it will at least give the character of direct falsity to some parts of the certificate and of doubtful certainty to all the rest of it, and places the evidence to be derived from that certificate in a situation similar, in the opinion of the committee, to that of a witness in a court of justice who should testify to several material facts, on one of which the material points his testimony should be fully proved to be wholly destitute of truth. In the absence of all other evidence, a court of justice, as the committee apprehend, would not permit the rights and interests of a party to be affected or compromised by testimony so tainted and invalidated, especially if that departure from truth be of such a complexion.as to evince design and impure intention. The inspectors have been allowed, and that too very properly, by the committee, when their official acts were directly drawn in question, to purge themselves and their conduct by their own testimony, subject, however, in the opinion of the committee, to the caution which should attend the reception of testimony or evidence from such a quarter. And, it is to be observed, that the scope of their testimony is directed to the exclusion of the fact, that their certificate contains anything but the real truth, and particulaily denies that any person or persons but themselves, or one or more of them, could have the means of altering the ballots in the boxes. The town clerk particularly states that he heard (before the election) threats of destroying the election of that town; extraordinary as it might seem that any person of sound intellect should deal in such threats, as all such threats must have lacked power to change ballots in the ballot-boxes honestly, safely and exclusively kept by the inspectors themselves, and that too while they had the power to determine what ballots should be received.
This part of the testimony might well have suggested the reflection to the committee that it is well adopted to provide a coloring for the serious apprehensions as to the nature of the events that have alarmingly happened, if we give credit to the sixty witnesses to the fact that the ballot-boxes were sifted of their contents. Words alone, without the use of more prevailing and seducing means, could never open the ballot-boxes, or change the contents. And yet this has been done, provided the testimony of more than sixty electors of that town may be safely credited.
*90 Again, the committee will observe that the investigations which have been had ; the collection of the evidence, and the proceedings in the town to present the case to this House, have been open and public, with previous notice in the public newspapers, thereby affording opportunity to discredit, or throw doubts on the testimony of the electors who stand arrayed by their oaths against the inspectors. Opportunity, however, will be afforded, the committee hope, (if such is wanted and can be had) to invalidate their- testimony or destroy their credibility, if practicable, and put this subject in its true light.
The case is peculiar, as the committee have before remarked, and is distinguished, in its leading features, from any other that lias ever came before this House. If there is wrong here, it is wrong by design, and can scarcely be attributed to accident, mistake or honest error of judgment. Whether it is within the province of the committee to look for or designate the persons or person who have done the alleged mischief, and committed so flagrant an outrage upon the rights of electors, which, if tolerated or permitted to escape the most rigerous reprehension within the power of the House, would endanger the whole fabric of elective government, and strike a deadly blow at the most sacred rights of a free people, is what this House must determine. Fraud, or even uncertainty in the returns of elections, is death to the liberties of our constituents.
If the canvass of the votes in the town in question is°deprived of the certainty which the inspectors’ certificate imports, the committee know of no mode, within the constitutional power of this House, to restore it to certainty. But we can so far protect the purity of our own body as to permit no seat therein to be holden on the strength of a certificate that is false or fraudulent, in whole or in part; and if a certificate is found to be false in part, it would be unreasonable to presume, without some redeeming certainty, that it is true in the other part. If there is fraud, corruption or gross negligence in the ballqt-box in question, it would taint the whole election of the town ; and the gangrene limb must be amputated, and to be effectual it must be entire. The example and tendency of giving credit to a false certificate would be more dangerous, in the opinion of the committee, to the rights of suffrage, than its total rejection. Amid the regrets occasioned by the painful duty imposed upon the committee, of considering even a supposed case of fraud and corruption at all, they find a consolation in its happening at a time when (as far as this House is CQncerned) no object can be desired or aimed at but a faith *91 ful support of tlie great principles on which depends the safety of all our rights and institutions.
In conclusion, the committee feel compelled to entreat the pardon of this House for the great length of their report, which nothing but the magnitude of the question involved could have justified. It, however, is due to the House to state, that the committee are not unanimous in the resolutions which they now submit to the House:
Resolved (as the sense of this House), That they are satisfied that fraud or corruption has been practiced upon the ballot-box for electors and member of Congress, at the late election in the town of Greenfield in the county of Saratoga; but they have hot conclusive evidence that such fraud or corruption was practiced by the consent or with the’knowledge of the board of inspectors of- said town.
Repoet that Election is Yoid.
Resolved (as the sense of this House), That the election in the town of Greenfield is void and of no effect, and that the 'prayer of the petitioners ought to be granted.
(For the documents alluded to in this report, see Assembly Journal, 1829, Appendix C.)
Ordered, That the said report and resolutions be committed to a committee of the whole house.
Ordered, That the usual number of copies of the same be printed for the use of the Legislature.
Assembly Journal, 1829, pages 322 to 327.
In Assembly, February 1th, 1829.
Report, affidavits, etc., re-committed to the committee.
Ordered, That the report of the committee on privileges and elections, on the petition of Harvey Granger, of the town of Greenfield, in the county of Saratoga, praying to be admitted to a seat in this House, as a member of Assembly from said county, together with the petition of the inspectors of election of said town of Greenfield, praying that a commission may be granted, for the purpose of obtaining testimony in relation to frauds alleged to have been committed in that town, at the late annual election, and the accompanying affidavits, be re-committed to the committee on privileges and elections. Assembly Journal, 1829, pages 395, 396.
*92 SECOND REPORT OE COMMITTEE.
IN Assembly, Fébnoary 11th, 1829.
Mr. Edgarton, from the committee on privileges and elections, to which, was re-committed the petition and documents relating to the election in the town of Greenfield, reported:
That they have had again under their consideration the subject, and the additional documents submitted to them, and see no reason to alter their former report on the same subject.
COMMITTED TO COMMITTEE OP THE WHOLE.-MADE. SPECIAL OliDEE.
Ordered, That the said report and documents be re-committed to committee of the whole, and that the same be the special order of the day for Monday next.
Assembly Journal, 1829, page 409.
For documents, petitions, etc., see Appendix D; Assembly Journal, 1829.
IN Assembly, February 19th, 1829.
Report CoNsidered.
The House then proceeded to the consideration of the report of the committee of the whole, on the resolutions reported by the committee on privileges and elections, on the petition of Harvey Granger, praying admission to a seat in this House, as a member duly elected in and for the county of Saratoga; the said report being that the committee had'agreed to a resolution in the words following, to wit:
Resolved, That the prayer of the petitioner ought not to be granted.
Report AmeNded.
Mr. Savage made a motion that the House should agree to amend the said report, by inserting immediately preceding the said resolution, a resolution in the words following, to wit:
Resolved (as the sense of this House), That they have reason to believe that fraud or corruption lias been practiced upon the ballot-box for Elector, and Member of Congress, at the late election in the town of Greenfield, in the county of Saratoga; but they have not conclusive evidence that such fraud or corruption was practiced with the consent or with the knowledge of the board of inspectors of said town, or that any fraud was practiced upon the Assembly box.
Debate was had upon the said motion of Mr. Savage; and the *93 question being put whether the House would agree thereto, it was determined in the affirmative.
Ayes, 66. Nays, 44.
Thereupon,' Mr. Edgarton made a motion that the House should agree to amend the resolution agreed to by the committee of the whole, by striking out of the same the word “not.”
The Speaker put the question whether the House would agree to the said motion of Mr. Edgarton, and it was determined in the negative.
Nays, 103. Ayes, 8.
Thereupon, the report of the committee of the whole being divided, Mr. Speaker put the question whether the House would agree to so much of the said report as is contained in the first of the said resolutions, and it was determined in the affirmative.
Ayes, 66. Nays, 42.
Thereupon, the House agreed to the second resolution.
Ayes, 101. Nays, 3.
Assembly Journal, 1829, pages 501 to 505. See also pages 485 and 499. ' •